UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MINNESOTA LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 10 C 6003 |
| v. | ) ) | Judge Ruben Castillo |
| ARLENE KAGAN, TAMMY KAGAN, SCOTT KAGAN, and RICHARD KAGAN, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Minnesota Life Insurance Company ("Minnesota Life") brought this interpleader action under 28 U.S.C. § 1332 and Federal Rule of Civil Procedure 22 against Arlene Kagan, and Tammy Kagan, Scott Kagan, and Richard Kagan (collectively, "the Children"), to settle their competing claims to the proceeds of a life insurance policy it issued to the now decedent Allen Kagan. (R. 1, Compl.) Presently before the Court are cross-motions for summary judgment by Arlene and the Children, (R. 25, Arlene's Mot.; R. 30, Children's Mot.), and two motions to strike. (R. 40, Arlene's Mot. to Strike; R. 43, Children's Mot to Strike.) For the reasons stated below, both motions to strike are denied, Arlene's motion for summary judgment is granted, and the Children's motion for summary judgment is denied.

### RELEVANT FACTS[1]

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 27, Arlene's Local Rule 56.1 Statement of Material Facts ("Arlene's Facts"); R. 31, Children's Local Rule 56.1 Statement of Material Facts ("Children's Facts"); R. 32, Children's Local Rule 56.1 Response to Arlene's Local Rule 56.1 Statement of Material Facts ("Children's Rule 56.1 Resp."); R. 38, Arlene's Local Rule 56.1 Response to Children's Local Rule 56.1 Statement of Material Facts ("Arlene's Rule 56.1 Resp."); R. 38, Arlene's Statement of Additional Facts ("Arlene's Add. Facts").)

## I.    Motions to strike

Before summarizing the facts of this case, the Court first addresses the parties' motions to strike portions of the opposing party's Rule 56.1 statements of fact.

### A.    Arlene's motion to strike

Arlene seeks to strike paragraphs 21 and 22 of the Children's Facts because "they allege certain statements which are privileged pursuant to Illinois law." (R. 40, Arlene's Mot. to Strike at 1.) Specifically, Arlene contends that these statements, which pertain to the marriage counseling she and Allen received prior to his death, are privileged under the Illinois Mental Health and Developmental Disabilities Confidentiality Act (the "Act"), 740 Ill. Comp. Stat. § 110/1, *et seq.* (*Id.* at 2.)

Paragraph 21 states that "[f]rom at least early 2008 until the time he passed away, Allen Kagan and Arlene Kagan were involved in marriage counseling on at least a monthly basis." (R. 31, Children's Facts ¶ 21.) Given that it is the affidavit of Tammy, Allen's daughter who lived with them during this time, which provides the evidentiary support for this fact, paragraph 21 clearly falls outside the provision of the Act that Arlene cites in support of her argument. Section 110/10 of the statute applies only to the privilege of "a recipient" of counseling or "a therapist" not to disclose certain records or communications as specified in the statute, not a third party's personal observation that a person has attended counseling. 740 Ill. Comp. Stat. § 110/10. Additionally, Tammy's observations are clearly not "records" or "communications" as defined by the Act. *Id.* § 110/2. Finally, contrary to Arlene's argument under Federal Rule of Evidence 602, Tammy need not have attended the marriage counseling to have personal knowledge that the

marriage counseling occurred. The Court therefore will not strike paragraph 21 of the Children's Facts.

Paragraph 22 provides that "Allen Kagan made notes in his personal handwriting regarding their marital counseling issues." (R. 31, Children's Facts ¶ 22.) Once again, Tammy's affidavit in which she states that she found certain notes, attached as Exhibit K, after Allen's death, supports this statement. (*Id.*, Ex. 12, Tammy's Decl. ¶ 17.) While the Court finds that the statement in paragraph 22 does not violate the Act, it is concerned by the notes contained in Exhibit K. An initial review of the notes indicates that they may have been written by Allen "to a therapist . . . in connection with mental health . . . services," and therefore "communications" under the Act. 740 Ill. Comp. Stat. § 110/2. The record regarding these notes and the marriage counseling that Arlene and Allen participated in is not sufficiently developed, however, to conclude definitively that the notes constitute "communications" as defined by the Act. Further, the parties' briefing regarding the applicability of the Act in this context, in which notes found after the death of a recipient of therapeutic treatment are sought to be disclosed by his children, but a co-recipient of the treatment asserts a claim of privilege, is cursory and unhelpful.[2] The Court will therefore not strike Exhibit K. Nevertheless, out of an abundance of caution, the Court will request the Clerk of the Court to refile Exhibit K under seal.

**B.     The Children's motion to strike**

---

[2] The parties also fail to address Section 110/5(e) of the Act, which provides that "Except as otherwise provided in this Act, records and communications shall remain confidential after the death of a recipient and shall not be disclosed unless the recipient's representative, as defined in the Probate Act of 1975 and the therapist consent to such disclosure or unless disclosure is authorized by a court order after in camera examination and upon good cause shown." 740 Ill. Comp. Stat. § 110/5(e).

The Children seek to strike several portions of Arlene's Facts, Arlene's Additional Facts, and supporting affidavits. (R. 32, Children's Rule 56.1 Resp.; R. 43, Children's Mot. to Strike.) Their objections fall into three main categories. First, the Children contend that the Minnesota Life and other business documents that Arlene relies upon lack foundation. (R. 32, Children's 56.1 Resp.; R. 43, Children's Mot. to Strike ¶ 2; R. 30, Children's Resp.) Second, they argue that several of the facts in Arlene's Rule 56.1 statement contain legal conclusions. (*Id.*) Finally, the Children contend that certain facts regarding Allen's heart condition and Arlene's knowledge of Allen's condition are vague and lacking in foundation, and that the supporting affidavit is insufficiently detailed and contains inadmissible hearsay. (*Id.*)

Regarding the Minnesota Life documents and other business records, the Children's motion to strike fails. While Arlene has not set forth the foundation that would be necessary at trial to introduce the documents, the Children do not dispute the authenticity of the documents, and, in fact, rely on several of them in support of their own motion for summary judgment. (*See* Children's Facts, Exs. A, G.) Thus, absent any arguments that the Minnesota Life documents and other business records "cannot be presented in a form that would be admissible in evidence" at trial, the Court declines to strike Arlene's facts that rely on these documents. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form *that would be admissible* in evidence.") (emphasis added); *see also Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000) ("[A]lthough the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. For example, a deposition transcript is not usually admissible at trial but (obviously) may be used in support of

4

summary judgment; but a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition.") (citation omitted).

The Court also declines to strike any of Arlene's facts based on the Children's argument that they contain legal conclusions. To the extent that a purported fact contains a legal conclusion, the Court will not consider it. "Indeed, it is the function of the Court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Prince v. Chi. Public Sch.*, No. 09-CV-2010, 2011 WL 3755650, at *2 (N.D. Ill. Aug. 25, 2011).

The Children's third objection to portions of Arlene's affidavit in support of her Statement of Additional Facts also fails. The Court finds that the affidavit is sufficiently detailed, based on personal experience, and therefore in accordance with Rule 56(c)(4) of the Federal Rules of Civil Procedure. Accordingly, the Court denies the Children's motion to strike in its entirety.

## II.     The undisputed material facts

### A.     The claimants

Allen, whose life insurance policy benefits gave rise to this suit, died on December 2, 2009. (R. 32, Children's Rule 56.1 Resp. ¶ 11.) Arlene is Allen's surviving spouse. (*Id.* ¶ 2.) They were married on August 13, 2006. (*Id.* ¶ 10.) From at least early 2008 until the time he passed away, Allen and Arlene were involved in marriage counseling on at least a monthly basis. (R. 31, Children's Facts ¶ 21.)

Prior to their marriage, Arlene and Allen entered into an Antenuptial Marital Property Agreement ("Antenuptial Agreement") on August 8, 2006. (R. 32, Children's Rule 56.1 Resp. ¶ 8.) The Antenuptial Agreement provides that Allen shall execute a Last Will and Testament bequeathing all property or assets acquired after marriage to Arlene. (*Id.* ¶ 16.) The Antenuptial Agreement further provides that it shall be binding upon Allen's heirs, executors, and administrators. (*Id.* ¶ 19.)

Tammy, Scott, and Richard are Allen's surviving children. (*Id.* ¶¶ 3-5.) Tammy and her two children lived with Allen and Arlene prior to Allen's death. (R. 31, Children's Facts, Ex. J; R. 38, Arlene's Add. Facts ¶ A2.) This living arrangement caused tensions between Tammy, Arlene, and Allen. (R. 38, Arlene's Add. Facts ¶¶ A9-A13.)

### B.    Allen's other life insurance policies and will

Prior to September 2007, Allen worked for Target Corporation. (R. 27, Arlene's Facts, Ex. P.) Target Corporation offered Allen a life insurance policy and supplemental coverage (the "Target Policies") as an employee benefit. (*Id.* at ML 19-21.) The Target Policies were provided by Minnesota Life. (*Id.* at ML 47-49.) The Target Policies were specified in the Antenuptial Agreement as non-marital property. (R. 27, Arlene's Facts, Ex. D at 10.)

After terminating his employment with Target, Allen continued the coverage from the Target Policies. (R. 27, Arlene's Facts, Ex. P at ML 11, 19, 21.) Allen actively managed these policies from 2007 to 2009, changing the beneficiaries and coverage amount of at least one policy. (R. 38, Arlene's Add. Facts ¶¶ A3-A7.) At the time of Allen's death, the named beneficiaries of the Target Policies were Tammy, Richard, and Scott. (R. 27, Arlene's Facts, Ex.

P at ML 10.) The Children have collected the benefits due to them under the Target Policies. (*Id.* at ML 16-18.)

In addition to the Target Policies, Allen had other life insurance policies and bank accounts. (R. 27, Arlene's Facts, Ex. D, Schedule A at 1-2; R. 31, Children's Facts ¶ 25.) While the facts before the Court do not paint a clear picture of all of the accounts and policies, it is undisputed that Allen "specifically designated" the Children on nearly all of the bank accounts and on four life insurance policies (none of which is the policy at issue here), all of which were obtained prior to his marriage to Arlene. (R. 31, Children's Facts, Ex. J at 3-4.) Although Arlene was specifically designated as a beneficiary on at least one of these polices during the course of the marriage, at the time of Allen's death, she was not a designated beneficiary on any of these four policies. (R. 38, Arlene's Add. Facts ¶¶ A3-A4.)

Other than a purported gift of a grave site and $100,000, Allen's will bequeathed the balance of his estate to the Children. (R. 32, Children's Rule 56.1 Resp. ¶ 17.) Arlene has never received the specific bequest of $100,000. (*Id.* ¶ 18.) According to the Children, there were not enough assets in the estate to distribute funds to Arlene or to probate the estate. (R. 31, Children's Facts ¶ 12.)

## C. The SuperValu Policy

On September 10, 2007, Allen began employment with SuperValu.[3] (R. 32, Children's Rule 56.1 Resp. ¶ 23.) Minnesota Life issued a certificate of insurance to Allen under Minnesota

---

[3] Minnesota Life alleged that Allen began employment with SuperValu on August 13, 2006. (R. 1, Compl. ¶ 11.) This appears to be a scrivener's error, as the exhibit cited in support of that date clearly states that Allen's hire date was September 10, 2007. (*Id.*, Ex. B at 1.) The Court proceeds under the assumption that September 10, 2007, the date Arlene and the Children agree is the date that Allen began employment with SuperValu and the Policy coverage commenced, is the correct date. (R. 32, Children's Rule 56.1 Resp. ¶ 23.)

Life Group Policy No. 28731 (the "SuperValu Policy" or the "Policy") on behalf of SuperValu. (*Id.* ¶ 24.)

The Policy provides employee benefits upon death of $74,000 in basic coverage and $341,000 in supplemental coverage. (*Id.* ¶ 25.) The terms of the Policy provide that "the death benefit [will be paid to the beneficiary] at the insured's death." (*Id.* ¶ 31.) The terms further provide that "if the insured does not name [a beneficiary], [Minnesota Life] will pay the death benefit to : (1) the insured's lawful spouse . . ." (*Id.* ¶ 32.)

Under the terms of the SuperValu Policy, the insured can change beneficiaries if: "(1) the insured's coverage is in force; and (2) [Minnesota Life has] written consent of all irrevocable beneficiaries; and (3) the insured has not assigned the ownership of his or her insurance." (R. 38, Arlene's Rule 56.1 Resp. ¶ 16.) The Policy further states: "A request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will not affect payment we make or action we take before receiving an insured's notice." (*Id.*)

At the time of Allen's death, SuperValu did not have a beneficiary designation on file. (R. 38, Arlene's Facts, Ex. A ¶ 13.) The beneficiary information section of the Policy's coverage summary indicated that Arlene was the sole beneficiary to the benefits of the Policy by operation of the default beneficiary schedule under the terms of the Policy. (*Id.* ¶ 12.)

After Allen's death, on February 1, 2010, the Children submitted a change of beneficiary form to Minnesota Life that listed the Children as primary beneficiaries of the Policy (the

8

"Change of Beneficiary Form" or the "Form").[4] (R. 38, Arlene's Rule 56.1 Resp. ¶ 18.) The

Form is dated August 15, 2008. (R. 32, Children's Rule 56.1 Resp. ¶ 37.) Arlene disputes the

authenticity of the Form, but for purposes of this motion, she assumes the Form was actually

signed by Allen on the given date. (R. 26, Arlene's Mem. at 8, n.1.)

## PROCEDURAL HISTORY

Minnesota Life initiated this interpleader action on September 21, 2010. (R. 1, Compl.)

Minnesota Life alleged that it was exposed to multiple liability due to the competing beneficiary

claims of Arlene and the Children in connection with the Policy. (*Id.* ¶ 1.) On September 22,

2010, the Court granted judgment in favor of Minnesota Life, directed Minnesota Life to deposit

the proceeds of the Policy with the Clerk of the Court, and informed the parties that all claims for

the disputed proceeds were to be filed with the Court. (R. 3, Min. Entry.)

Arlene and the Children subsequently filed answers to the Complaint and crossclaims.

(R. 17, Arlene's Claim; R. 23, Children's Crossclaim.) Arlene and the Children each allege that

they are entitled to the proceeds of the Policy. (*Id.*) On June 8, 2011, Arlene filed a motion for

summary judgment. (R. 25, Arlene's Mot.). The Children filed a cross-motion for summary

judgment on July 29, 2011. (R. 30, Children's Mot.) Both the Children and Arlene filed

---

[4] The Court notes that the Children raised two possible facts in dispute regarding the Policy in footnotes in their motion and reply brief. First, the Children contend that "the question of whether the Policy was tendered and/or received by Minnesota Life is unanswered." (R. 30, Children's Mem. at 5, n.1.) Second, the Children state "[t]here is also may be [sic] at least a question of fact as to whether this policy was original and acquired during the marriage or a transfer or rollover from a prior policy with his previous employer." (R. 45, Children's Reply at 3, n.1.) It is clear to the Court these contentions are mere speculation on the part of the Children, and not actually disputed facts. Even if they were disputed facts, however, the Court would not consider them because footnotes are not the place for disputed facts to be raised in opposing summary judgment. *See Malec*, 191 F.R.D. at 584.

motions to strike portions of each other's Rule 56.1 statements of fact. (R. 40, Arlene's Mot. to Strike; R. 43, Children's Mot. to Strike).

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In resolving a motion for summary judgment, the Court draws all reasonable inferences and resolves all factual disputes in the non-moving party's favor. *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009). On cross-motions for summary judgment, the same standard of review in Federal Rule of Civil Procedure 56 applies to each movant. *Continental Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for [it]." *Wheeler*, 539 F.3d at 634.

## ANALYSIS

The parties' primary dispute is whether Allen effectively changed the beneficiary of the SuperValu Policy from Arlene to the Children. The Children contend that they are entitled to

summary judgment because Allen's completion of the Change of Beneficiary Form complied with the terms of the Policy, or alternatively, substantially complied with the Policy, and they are therefore entitled to the proceeds of the Policy. (R. 30, Children's Mot. 3.) Arlene, on the other hand, maintains that she is the rightful beneficiary of the Policy and entitled to summary judgment because the undisputed evidence does not establish that Allen substantially complied with the contractual provisions providing for changing beneficiaries under the Policy. (R. 26, Arlene's Mem. at 6-12.)

## I.    Compliance with the Policy's requirements to change beneficiaries

The Children first contend that they are the rightful beneficiaries of the Policy because "the Change of Beneficiary Form complies with the terms of the Policy." (R. 30, Children's Mot. at 3.) As a general rule, if a policy prescribes the method for changing beneficiaries, that method is exclusive and a change by any other means is generally ineffectual. *John Alden Life Ins. Co. v. Propp*, 627 N.E.2d 703, 706 (Ill. App. Ct. 2d Dist. 1994) (citations omitted). Contrary to the Children's contention, the undisputed evidence establishes that Allen did not comply with each and every technical requirement to achieve a change in beneficiary.

As mentioned above, the pertinent section of the Policy provides:

> **Can an insured add or change beneficiaries?**
> Yes. An insured can add or change beneficiaries if all of the following are true:
> (1) the insured's coverage is in force; and
> (2) we have written consent of all irrevocable beneficiaries; and
> (3) the insured has not assigned the ownership of his or her insurance.
>
> A request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving an insured's notice.

(R. 31, Children's Facts, Ex. G at ML 223.)

The Change of Beneficiary Form instructions state:

> **INSTRUCTIONS:**
> 1. Print or type in the space below, the full name, relationship to the employee and share % of each beneficiary to be named.
> 2. Sign and date the completed form and return it to Minnesota Life.
> 3. This designation applies to your Basic and Optional coverage.
> 4. Call 1-866-283-6047 with questions.

(*Id.* at ML 148.)

Here, Allen's coverage was in force, there were no irrevocable beneficiaries, and he had not assigned ownership of his insurance, so there is no doubt that Allen could have changed the beneficiaries had he so desired. Instead, the dispute is whether Allen complied with the Policy's terms regarding what is necessary to effectuate a change of beneficiaries. The Children contend that merely completing and signing a change in beneficiary form satisfies the Policy's terms, so Allen, in completing and signing the form on August 15, 2008, complied with the terms. (R. 30, Children's Mot. at 5.) Arlene argues that delivery of written notice must occur under the Policy's terms to effectuate a change, which Allen did not do. (R. 26, Arlene's Mem. at 8-9.)

While the section of the Policy that explains how to change beneficiaries is not a model of clarity, the Court concludes that it requires more than merely signing a change of beneficiary form. The only reasonable interpretation of the statements that "a request . . . must be made in writing" and "[a] change . . . will not affect any . . . action we take *before receiving an insured's notice*" is that the insured must send a written request to change beneficiaries to Minnesota Life. This interpretation is further supported by the change of beneficiary form itself, which instructs the insured to return the completed form to Minnesota Life. (R. 31, Children's Facts, Ex. H at

ML 148.) While the Policy does state that a "change will take effect as of the date it is signed," the other terms of the Policy, when read in conjunction with the change of beneficiary form, clearly indicate that notice to Minnesota Life is required to effectuate the change. (*Id.*, Ex. G at ML 223.)

Here, there is no dispute that Allen did not return the Change of Beneficiary Form to Minnesota Life. Accordingly, the Court concludes that he did not fully comply with the technical requirements of the Policy to effectuate a change in beneficiaries.

## II.    Substantial compliance

The Children next contend that Allen "substantially complied with all requirements needed to change the beneficiaries of the Policy to his Children." (R. 30, Children's Mot. at 5.) Before analyzing whether the undisputed evidence in this case establishes that Allen substantially complied with the requirements of the Policy, the Court briefly expands upon the legal standard to be applied to this determination at summary judgment. The interpretation of the Policy's terms is clearly a matter of law that is properly decided at summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) ("Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment.") (citations omitted). Whether the actions taken by Allen "substantially complied" with the terms of the Policy, however, is a mixed question of law and fact that is normally reserved for the jury. *Hoopingarner*, 768 N.E.2d at 776 ("Questions as to the effectiveness of a change of beneficiary are generally for the jury.") (citations omitted); *Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188, 1192 (Ill. App. Ct. 1982) (same); *Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, 1210 (5th Cir. 1977) (holding that district court erred in directing a

verdict because, in part, "the effectiveness of the change-of-beneficiary form signed in blank by the insured presented a material question of fact for the jury of whether [the insured] intended to change the beneficiary . . ."); *Prudential Ins. Co. v. Alexander*, No. 91 C 726, 1991 WL 237826, at *3 (N.D. Ill. Nov. 1, 1991) ("Fact questions also exist with respect to the related issue of whether the actions allegedly taken by [the insured] evidenced an intent to change her beneficiary[.]"); *Emery v. Nat'l Life & Acc. Ins. Co.*, 614 F. Supp. 167, 170 (C.D. Ill. 1985) (noting that the determination regarding the insured's intent to change beneficiaries is a mixed question of law and fact to be decided by the trier of fact).

Nevertheless, despite this general rule, if the undisputed evidence shows that the "insured clearly failed to comply substantially with the requirements for changing a beneficiary," summary judgment is appropriate. *Hoopingarner*, 768 N.E.2d at 776 (citation omitted). This standard is similar to that established by the Seventh Circuit regarding the resolution of mixed questions of law and fact at the summary judgment stage. Under Seventh Circuit precedent, mixed questions of law and fact may be resolved on summary judgment "if a reasonable trier of fact could reach only one conclusion—but not otherwise." *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 516-17 (7th Cir. 2002) (internal quotation marks and citations omitted). Accordingly, the Court will only grant summary judgment if a reasonable juror could reach only one conclusion regarding whether Allen substantially complied with the Policy's terms based on the undisputed evidence before the Court.

Turning now to the doctrine of substantial compliance, under Illinois law, courts in equity have not required exact compliance with the conditions prescribed by an insurance policy "when an insured has done everything in his power to effectuate a change" in beneficiaries. *Aetna Life*

14

*Ins. Co. v. Wise*, 184 F.3d 660, 663 (7th Cir. 1999) (citation omitted). Instead, it is sufficient that

the insured "substantially comply with the policy terms." *Hoopingarner v. Stenzel*, 768 N.E.2d

772, 776 (Ill. App. Ct. 3d Dist. 2002) (citations omitted); *Sternitzke v. Pruco Life Ins. Co.*, 64

Fed. Appx. 582, 584 (7th Cir. 2003). The doctrine of substantial compliance requires that for a

change of beneficiary to be effective, "the party asserting that a change has occurred must

establish: (1) the certainty of the insured's intent to change his beneficiary; and (2) that the

insured did everything he could have reasonably done under the circumstances to carry out his

intention to change the beneficiary." *Aetna Life Ins. Co.*, 184 F.3d at 663 (citing *Dooley v. James

A. Dooley Assoc. Emp. Ret. Plan*, 442 N.E.2d 222, 227 (Ill. 1982)).

### A.    Allen's intent to change the beneficiaries of the Policy

In order to establish substantial compliance, "certainty of intent is essential[.]" *Dooley*,

442 N.E.2d at 227. "Where factors exist which tend to indicate some equivocation—to cast

some doubt upon decedent's intent—the courts have generally held that the decedent did not

substantially comply with all requirements, or did not do all he could to effectuate the change, or

both." *Id.* at 226; *see also Sternitzke*, 64 Fed. Appx. at 584. Thus, the evidence must "establish

an unequivocal intent on the insured's part" to change the beneficiary. *Dooley*, 442 N.E.2d at

227.

The Children point to two main categories of evidence in support of their contention that

Allen intended to change the beneficiaries of the Policy from Arlene to the Children. First, they

rely upon the completed and signed Change of Beneficiary Form. (R. 30, Children's Mot. at 6.)

Second, they rely on Allen's other decisions disposing of his assets after his death as shown

through his will, the disposition of his other life insurance policies, and his handwritten notes on

15

an insurance summary document. (*Id.* at 7.) According to the Children, Allen's "intent could not be more clear" based on his "meticulous" and "detailed" filling out of the Change of Beneficiary form combined with his "indisputable global intent to pass the overwhelming majority of his assets to his Children." (*Id.* at 7-8.)

The Court disagrees. A reasonable juror could not conclude that Allen had the "unequivocal intent" to change the beneficiaries of the Policy based on the undisputed evidence before the Court. Regarding the Change of Beneficiary Form, the Children ignore several important facts. First, there is no evidence that Allen ever returned or attempted to return the Form to Minnesota Life. Instead, the complaint filed by Minnesota Life indicates that Allen never submitted to Minnesota Life any change of beneficiary form for the Policy. Second, Allen signed and completed the Form over fifteen months before he died. "Illinois courts have found that an unreasonable delay in returning change of beneficiary forms 'may manifest [a] change in the insured's intention or otherwise vitiate [a showing of] substantial compliance.'" *Sternitzke*, 64 Fed. Appx. at 584 (quoting *Travelers Ins. Co.*, 435 N.E.2d at 1191). Thus, to the extent the signed Form indicates that Allen at some point contemplated changing beneficiaries, the substantial amount of time that passed without him sending the Form to Minnesota Life indicates, at best, "some equivocation" as to Allen's intent. At worst, it shows that he consciously decided not to send the form.

Further, that Allen "meticulously" filled out the Form is a sign that he followed the first instruction on the form; this does not excuse or explain his failure to follow the second instruction—returning the form to Minnesota Life. (R. 31, Children's Facts, Ex. H at ML 148.) There is no evidence that he forgot to send the Form or did not realize that returning the Form to

Minnesota Life was required. Instead, the undisputed evidence shows that Allen actively managed and monitored his life insurance policies and knew what was required to make changes to the policies.

Nor does the evidence regarding Allen's estate planning indicate an "unequivocal intent" to change the beneficiaries of the Policy. First, regarding Allen's will, the Children ignore the chronology of events here: the will was signed July 18, 2007, but Allen did not begin working for SuperValu—and the Policy coverage did not commence—until September 10, 2007. (R. 27, Arlene's Facts, Ex. M at 10; *id.*, Ex. II at 1.) Thus, when Allen signed the will, he could not have intended to change the beneficiary of a life insurance policy that was not yet in existence.

Even ignoring the chronology of events and viewing the will as a general indication of Allen's desired disposition of his assets does not support the Children's argument. The will provides that Arlene was to receive Allen's tangible personal property acquired during their marriage, a gravesite adjacent to his gravesite, and $100,000 "in lieu of the gift of the marital estate provided for" in the Antenuptial Agreement. (*Id.*, Ex. M at 1.) According to the will, Allen's "intention by this gift [was] to give [Arlene] more than the share she would have gotten had [he] given her [his] half of the marital property contemplated" in the Antenuptial Agreement. (*Id.* at 2.) Contrary to the Children's assertions, this is not the will of a man who wanted to cut his wife out of any inheritance, and such an inference would be unreasonable. The only part of the will that could possibly support the Children's argument is the provision leaving "the balance of [his] estate" to the Children. (*Id.*) The will provides, however, that "the balance of [his] estate" means the estate "reduced by any payments of expenses, debts, and death taxes required to be paid from [the] estate and *any gifts of specific assets.*" (*Id.* at 9 (emphasis added).)

17

The disposition of Allen's other insurance policies also does not evince an "unequivocal intent" to change the beneficiaries of the Policy at issue here. The Children suggest that because Allen "specifically designated" the Children as beneficiaries of four of his other life insurance policies, he intended for them to be the beneficiaries of the SuperValu Policy. This argument, however, ignores a key difference between the four life insurance policies for which the Children were named as beneficiaries and the SuperValu Policy: the policies for which the Children were named as beneficiaries were obtained before he married Arlene, and were explicitly excluded from the marital estate in the Antenuptial Agreement. (R. 27, Arlene's Facts, Ex. D, Schedule A at 2.) The SuperValu Policy at issue here, however, was obtained after Allen and Arlene married. Accordingly, it is not inconsistent or illogical that the Children were the beneficiaries of the policies obtained by Allen before he married Arlene, and that Arlene was the beneficiary of the Policy at issue here, the sole policy he obtained after their marriage. At best, this evidence indicates that because Allen designated his children as beneficiaries on other policies in the past, he would be more likely to do so with this Policy. This is far from evidence of "unequivocal intent," however. Further, the evidence regarding Allen's designations on the other policies—which had changed at least once—indicate that Allen was not a novice at managing his life insurance policies, and knew what was required to effectuate a change of beneficiaries. *See Sternitzke*, 64 Fed. Appx. at 584.

The Children's final piece of evidence regarding Allen's estate planning and its probativeness as to Allen's intent is an electronic printout of a document entitled "Insurance Summary" and dated November 14, 2008, that contains handwritten notes by Allen. (R. 31, Children's Facts, Ex. L.) Under the breakdown of insurance policy benefits, Allen wrote the

18

names of five insurance policies and the value of each policy. (*Id.*) Next to the total for two policies, he wrote "Arlene – 100,000 (To Her)." (*Id.*) The Children contend that this was a specific designation of $100,000 to Arlene, "leaving the rest to the Children." (R. 30, Children's Mot.) A closer look at the document, however, does not bear that interpretation out. Allen wrote "Arlene" and "100,000" next to the two Target Policies that predated their marriage, not the SuperValu Policy at issue here. There is no name—neither Arlene's or the Children's—next to the SuperValu Policy. Thus, the Children's argument that these notes evince an intent on the part of Allen to change the beneficiaries of the SuperValu Policy is unsupported by the document.

In sum, even drawing all inferences in favor of the Children, the Court concludes that a reasonable juror could not find from the signed and completed—but unsent—Form and Allen's other estate planning decisions that Allen had the "unequivocal intent" to change the beneficiaries of the Policy from Arlene to the Children. Though this evidence provides some evidence of Allen's intent, the evidence "do[es] not eliminate all doubt such that unequivocal intent to change beneficiaries may be inferred." *Sternitzke*, 64 Fed. Appx. at 585.

**B.    Allen's steps to carry out a change in beneficiaries**

Although the Court has already determined that no jury could reasonably conclude from the undisputed evidence that Allen had the unequivocal intent to change beneficiaries, the Court briefly considers the second part of the "substantial compliance" test. Illinois courts have made clear that "[w]hile certainty of intent is essential, it will not suffice without more. There must be some combination of intent to make the change and positive action towards effecting that end." *Dooley*, 442 N.E.2d at 227. This means that the Children must put forth evidence from which a reasonable juror could conclude that Allen "did everything he could have reasonably done under

the circumstances to carry out his intention to change the beneficiary." *Aetna Life Ins. Co.*, 184 F.3d at 663. The Children have clearly failed to meet this burden as the only evidence of positive action taken by Allen was his completion of the Change of Beneficiary Form. There is no evidence, however, that Allen sent, or attempted to send, the Form to Minnesota Life, and there is no evidence that any circumstance prevented him from doing so. A reasonable juror could therefore only reach the conclusion that Allen failed to do "everything he could have reasonably done" to effectuate the change.

The cases cited by the Children do not dictate a different result. In each case, the evidence of the insured's intent to change the beneficiaries of a life insurance policy was far clearer, and some circumstance prevented the insured from carrying out his or her clearly manifested intention of changing beneficiaries. *See Criscuolo v. United States*, 239 F.2d 280 (7th Cir. 1956) (evidence presented that insured told three witnesses that he was going to change beneficiaries, and gave the names of the new beneficiaries to the person in charge of personnel matters, including changes in beneficiaries of life insurance policies, but was stricken that evening with an illness that killed him within a week before he could sign the form); *Travelers Ins. Co.*, 435 N.E.2d at 1192 (reversing summary judgment where evidence was presented that following a separation from his wife, the insured had submitted a change of beneficiary form on May 17, 1980, that his employer rejected some time after that date because it had only been witnessed by one person, and though the insured obtained a second witness' signature, the form was not returned to the employer but was found among his personal effects after he died on August 31, 1980); *John Hancock Mut. Life Ins. Co. v. Douglass*, 156 F.2d 367 (7th Cir. 1946) (evidence presented that after separating from his first wife and remarrying, the insured had

signed a change of beneficiary form revoking prior designations and naming his current wife as beneficiary, but when his wife brought the form to the insurer on October 2, 1943, the form was rejected for failure to comply with certain technical requirements, but before the insured could sign the new forms provided by the insurer, he died suddenly as the result of an accident on October 8, 1943); *Conn. Gen. Life Ins. Co. v. Gulley*, 668 F.2d 325 (7th Cir. 1982) (evidence presented that insured executed a change of beneficiary form in the presence of his daughter on March 11, 1979, and told her that he wanted her to receive the proceeds of the policy because he had otherwise provided for other family members, but suffered a fatal heart attack on March 18, 1979, before he had sent the form); *State Emp. Ret. Sys. of Ill. v. Taylor*, 476 N.E.2d 749 (Ill. App. Ct. 3d Dist. 1985) (evidence presented that insured sent letter to insurer asking insurer to change beneficiaries, instead of using the form required by the insurer, and died four months later).

Here, unlike in the cases cited by the Children, no inference can be drawn from the evidence that Allen's death interrupted the completion of the process of changing beneficiaries given the fifteen months that passed between his signing of the Change of Beneficiary Form and his death. Accordingly, a reasonable juror could only conclude that Allen did not substantially comply with the Policy's terms to change beneficiaries, and the Court accordingly grants Arlene's motion for summary judgment.

## CONCLUSION

For the reasons stated above, Arlene's motion for summary judgment (R. 25) is GRANTED and the Children's motion for summary judgment (R. 30) is DENIED. Both parties'

motions to strike (R. 40; R. 43) are DENIED, but the Clerk of the Court is directed to refile

Exhibit K of the Children's Local Rule 56.1 Statement of Material Facts (R. 31-12) under seal.

The Court hereby orders the disputed proceeds deposited with this Court to be released to

Arlene Kagan and her designated attorney.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** March 13, 2012